IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JEROME D. CLARK,            )
                                   )
        Plaintiff,         )
                                   )
        v.             ) Civ. No.14-029-SLR
                                   )
JAMES WELCH, et al.,      )
                                   )
        Defendants.   )

---

Jerome D. Clark, Wilmington, Delaware.  Pro se Plaintiff.

Roopa Sabesan, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for Defendants James Welch and Philip Morgan.

Daniel A. Griffith and Scott G. Wilcox, Esquires, Whiteford, Taylor & Preston, L.L.C., Wilmington, Delaware.  Counsel for Defendants Kristen Hernandez, Chermain Welch, and Correct Care Solutions LLC.

Gary H. Kaplan and Artemio C. Aranilla, II, Esquires, Marshall, Dennehey, Warner, Coleman & Goggin, Wilmington, Delaware.  Counsel for Defendant Asia A. Jones.

---

**MEMORANDUM OPINION**

Dated:  March  3 , 2016
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Jerome D. Clark ("plaintiff"), a former inmate at the Howard R. Young Correctional Institution ("HRYCI"), Wilmington, Delaware, proceeds pro se and has been granted leave to proceed in forma pauperis.  He filed this lawsuit on January 14, 2014, raising dental needs claims pursuant to 42 U.S.C. § 1983.  (D.I. 2)  Presently before the court are unopposed motions for summary judgment filed by defendants Asia A. Jones ("Jones"), Kristen[1] Hernandez ("Hernandez"), Chermain Welch ("Welch"), and Correct Care Solutions, LLC ("CCS").  (D.I. 89, 101)  The court entered a briefing schedule, but plaintiff did not file oppositions to the motions.  (D.I. 109)  The court has jurisdiction pursuant to 28 U.S.C. § 1331.  For the following reasons, the court will grant the motions.

## II. BACKGROUND

Plaintiff was incarcerated at the HRYCI when he commenced this action on January 14, 2014.  He has since been released.  Plaintiff injured his teeth on August 24, 2013.  (D.I. 102, ex. A)  He notified a corrections officer who notified medical, and plaintiff was advised to submit a sick call slip.  (*Id.*)  The injury was considered non-emergent.  (*Id.*)  Plaintiff submitted a sick call slip, was seen by medical on August 29, 2013, and told he would be placed on the dental list.  (*Id.*)

When plaintiff was seen by dental on September 9, 2013, his mouth was x-rayed and later, on September 16, 2013, he was provided pain medication.  (D.I. 2, ex.; D.I. 102, ex. A)  He was seen on November 8, 2013 with complaints of pain and, on

---

[1]Misspelled by plaintiff as "Kristin."

December 23, 2013, one tooth (with a hole in it) was extracted. (*Id.*) A second tooth was extracted on February 18, 2014. (*Id.*) Plaintiff stated in discovery that his tooth became infected due to the length of time it took to diagnose the problem, and the infection was treated with medication. (*Id.*) Plaintiff has had "no problems whatsoever after receiving dental treatment." (*Id.*)

Plaintiff submitted a grievance, No. 272927, on September 14, 2013, complaining that he had waited over a week to receive pain medication. (D.I. 2, ex.) Jones, who is employed by Connections Community Support Programs, Inc. as a counselor at the HRYCI, served on the medical grievance committee that denied plaintiff's grievance. (D.I. 90, ex. A) Hernandez and Welch also served on the committee. (D.I. 2, ex.) Jones states that she had no professional involvement or interaction with plaintiff other than the denial of grievance No. 272927. (D.I. 90, ex. A) Informal resolution of the grievance indicates that plaintiff was given Motrin on September 16, 2013, to be taken as needed three times per day for seven days. (D.I. 2, ex.) On November 8, 2013, the grievance committee recommended denial of the grievance because plaintiff was scheduled to see dental within the six-month dental policy. (*Id.*) Plaintiff appealed the decision, arguing that the policy violated the Eighth Amendment. (*Id.*) The committee voted to deny the appeal, noting that plaintiff should follow the established treatment plan and continue to utilize the sick call process as needed and that the medical vendor should ensure timely delivery of services. (*Id.*) On December 11, 2013, defendant former bureau chief of Healthcare Services James Welch ("J. Welch") denied the appeal. (D.I. 2, ex.)

2

## III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). A party asserting that a fact cannot be--or, alternatively, is--genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The judge must ask not whether the evidence unmistakably favors one side or the other, but

3

whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. *Id.* at 252. The court must not engage in the making of "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" as these "are jury functions, not those of a judge, [when] [] ruling on a motion for summary judgment." *E.E.O.C. v. GEI Group, Inc.*, 616 F.3d 265, 278 (3d Cir. 2010) (citation omitted).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podobnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). Although the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," a factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. at 247-48. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

4

Plaintiff does not oppose the motions.  However, the court will not grant the entry of summary judgment without considering the merits of defendants' unopposed motions.  *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) (holding that a district court should not have granted summary judgment solely on the basis that a motion for summary judgment was not opposed.").

Jones moves for summary judgment on the grounds that:  (1) there is no evidence that supports plaintiff's claim against her; (2) there are no genuine issues of material fact; and (3) she has qualified immunity.  Hernandez, Welch, and CCS ("medical defendants") move for summary judgment on the grounds that:  (1) the claim for injunctive relief against CCS is moot because it is no longer the medical provider for Delaware prisons; (2) plaintiff cannot present facts that medical defendants were deliberately indifferent to his dental needs or that CCS maintained a policy or procedure that caused the deliberate indifference of which he complains; and (3) plaintiff has done nothing to prove his case.

## IV. DISCUSSION

Plaintiff seeks compensatory damages as well as injunctive relief for medical and/or dental treatment from the HRYCI and its medical vendor.  He also seeks examination by an outside physician and transfer to another correction facility.  Plaintiff is no longer incarcerated and, therefore, his requests for injunctive relief are moot.  In addition, having reviewed the record, the court finds that moving defendants did not violate plaintiff's constitutional rights.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  *Estelle v.*

*Gamble*, 429 U.S. 97, 103-105 (1976).  In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need.  *Estelle*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care."  *Estelle*, 429 U.S. at 104-05; *see also Monmouth Cnty. Corr. v. Lanzaro*, 834 F.2d 326, 346-47 (3d Cir. 1987) (deliberate indifference can be shown when medical treatment is delayed for non-medical reasons).

However, "a prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable.  *Lasko v. Watts*, 373 F. App'x 196, 203 (3d Cir. 2010) (quoting *Harrison v. Barkley*, 219 F.3d 132, 138-140 (2d Cir. 2000)).  An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf.  *Estelle*, 429 U.S. at 107.  Moreover, allegations of medical malpractice are not sufficient to establish a Constitutional violation.  *White v. Napoleon*, 897 F.2d 103, 108-09 (3d Cir. 1990) (citations omitted); *see also Daniels v. Williams*, 474 U.S. 327, 332-34 (1986) (negligence is not compensable as a Constitutional deprivation).  Finally, "mere

6

disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (citations omitted).

The record does not demonstrate that the moving defendants were deliberately indifferent to plaintiff's dental needs. Instead, the record reflects that plaintiff's dental needs were treated over a period of months. Plaintiff was seen by medical five days after he was injured and ten days later by dental. The initial dental visit was followed by dental treatment in November, December, and February.[2] Plaintiff stated in discovery that he received dental treatment, and he no longer has dental problems. Finally, while plaintiff complains of a delay in pain medication, the record reflects that the delay was relatively short. Based upon the evidence of record, no reasonable jury could find that defendants were deliberately indifferent to plaintiff's dental needs. Therefore, the court will grant defendants' motions for summary judgment.

Although Morgan does not seek summary judgment, given the record, it is appropriate to dismiss the claims against him. The Third Circuit has concluded that prison administrators cannot be deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). "If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d at 236 (discussing *Durmer*, 991 F.2d at 69). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating)

---

[2]Plaintiff provided the dates of dental treatment in discovery. The court was not provided with plaintiff's dental records.

a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* at 236.

It is clear from the record that plaintiff received continual dental treatment over several months. The court finds, therefore, that no reasonable jury could find deliberate indifference on behalf of Morgan, a non-medical prison official.

In addition, because the court concludes that the individual defendants did not violate plaintiff's constitutional rights under the Eighth Amendment, CCS cannot be liable based on the theory that it established or maintained an unconstitutional policy or custom responsible for violating plaintiff's rights. *See Goodrich v. Clinton Cnty. Prison*, 214 F. App'x 105, 113 (3d Cir. 2007) (unpublished) (policy makers not liable in prison medical staff's alleged deliberate indifference to prisoner's serious medical needs, where, given that there was no underlying violation of prisoner's rights, policy makers did not establish or maintain an unconstitutional policy or custom responsible for violating prisoner's rights). Therefore, the court will grant CCS' motion for summary judgment.

Plaintiff also complains that his grievance was denied by grievance committee members Hernandez, Jones, and Welch and that his appeal was denied by J. Welch. To the extent that plaintiff bases his claims upon his dissatisfaction with the grievance procedure and/or denial of his grievance, the claims fail because an inmate does not have a "free-standing constitutionally right to an effective grievance process." *Woods v. First Corr. Med., Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (unpublished) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). Further, the denial of the grievance appeal by J. Welch does not in itself give rise to a constitutional claim as plaintiff is free to bring

8

a civil rights claim in District Court. *See Winn v. Department of Corr.*, 340 F. App'x 757, 759 (3d Cir. 2009) (unpublished) (citing *Flick*, 932 F.2d at 729). There is no evidence of record that the grievance committee members or J. Welch denied plaintiff dental treatment and, because plaintiff cannot maintain a constitutional claim based upon the denial of his grievance, the court will dismiss the claims, including the claim against J. Welch.

Accordingly, the court will grant defendants' motions for summary judgment and will dismiss all remaining claims and defendants given that the record does not reflect that any defendant violated plaintiff's constitutional rights.

## VI. CONCLUSION

For the above reasons, the court will: (1) grant defendants' motions for summary judgment; and (2) dismiss all claims against James Welch an Warden Phillip Morgan.[3] (D.I. 89, 101)

A separate order shall issue.

---

[3]The evidence of record does not support a finding that plaintiff's constitutional rights were violated. Therefore, the court sees no need to address the issue of qualified immunity.

9